**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | |
|---|---|
| **JACQUELINE S. THACKER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Civil Action No. 7:16-cv-363** |
| | ) |
| **NANCY A. BERRYHILL, Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Jacqueline S. Thacker ("Thacker") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Thacker alleges that the ALJ erred by failing to give the opinion of her treating physician proper weight, failing to properly evaluate her credibility, finding her depression and anxiety to be non-severe impairments, and failing to properly consider her obesity. I conclude that the ALJ's opinion is supported by substantial evidence.  Accordingly, I **RECOMMEND DENYING** Thacker's Motion for Summary Judgment (Dkt. No. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Thacker failed to demonstrate that she was disabled under

the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted).

The final decision of the Commissioner will be affirmed where substantial evidence supports the

decision.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Thacker filed for SSI and DIB on August 29, 2012, claiming that her disability began on

January 1, 2010. R. 47.  The Commissioner denied the application at the initial and

reconsideration levels of administrative review.  R. 151–52, 177–78.  ALJ Ann V. Sprague held

administrative hearings on February 4, 2015 and July 20, 2015, to consider Thacker's disability

claim. R. 63–126.  Thacker was represented by an attorney at the hearings, which included

testimony from Thacker and vocational experts Mark Hileman and Asheley Wells. Id.

On September 10, 2015, the ALJ entered her decision analyzing Thacker's claim under

the familiar five-step process,[2] and denying Thacker's claim for disability. R. 47–57.  The ALJ

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

found that Thacker suffered from the severe impairments of fibromyalgia, diverticulitis, obesity

and degenerative disc disease. R. 49. The ALJ determined that Thacker's severe impairments did

not meet or medically equal a listed impairment, and that she retained the RFC to perform light

work. R. 51–52. Specifically the ALJ found that Thacker could frequently lift and carry 10

pounds and occasionally lift and carry 20 pounds; sit for six hours in an eight hour period; stand

and/or walk for six hours in an eight hour period; frequently stoop, crouch, crawl, push, pull, and

overhead reach; and never climb ladders, ropes or scaffolds. R. 52. The ALJ determined that

Thacker is capable of performing her past relevant work as a telephone representative, front desk

receptionist and server, and thus is not disabled. R. 55.  Thacker appealed the ALJ's decision and

submitted additional records to the Appeals Council for review. R. 8–43.  On June 16, 2016, the

Appeals Council denied her request for review. R. 1–4.  This appeal followed.

## ANALYSIS

### Treating Physician Opinion

Thacker asserts that the ALJ erred by according little weight to the opinion of her treating

physician, Clifford Nottingham, M.D., that she is limited to a range of less than light work. I find

that the ALJ properly explained the weight given to Dr. Nottingham's opinion, which allows for

meaningful review by the court and is supported by substantial evidence.

Thacker has a history of obesity, diverticulitis and complaints of back pain and joint pain.

Thacker began treating with Dr. Nottingham in 2010, for complaints related to diverticulitis,

muscle pain and depression and anxiety. R. 488, 496, 500, 514, 517.  Dr. Nottingham generally

recommended regular exercise, and prescribed Xanax "to use infrequently," and Cymbalta.

R. 488, 504.    Thacker underwent sigmoid colon resection surgery in July 2013, and recovered

from the procedure. R. 883–86, 889–90.

On May 21, 2013, state agency physician James Darden, M.D., reviewed Thacker's medical records and determined that Thacker could perform work at the medium exertion level. R. 134–35. State agency physician R.S. Kadian, M.D., reviewed Thacker's records upon reconsideration and concurred with Dr. Darden's conclusion that Thacker could perform medium work. R. 160–61.

In October 2013, Thacker complained of neck and back pain, and underwent x-rays of her cervical spine which revealed mild to moderate cervical spondylosis[3] at C4-C7, and mild neuro foraminal stenosis[4] at C3-C6. R. 841.

Thacker visited Dr. Nottingham on December 5, 2013, complaining of back pain, fibromyalgia and chronic pain in her neck. R. 740. Thacker told Dr. Nottingham that she was applying for disability and asked him to complete a form. Id. Dr. Nottingham noted that Thacker's primary issues "have to do with musculoskeletal complaints, particularly in the back, and associated with fibromyalgia." Id. Thacker complained of pain in her neck and low back, and discomfort with "jolts" down her left leg, multiple areas of tenderness through the neck, back, and extremities "presumably due to fibromyalgia," history of diverticulosis with diverticulitis and chronic IBS, some chronic constipation, urinary incontinence "at times," cramping in hands and feet, and painful shoulders with grinding and popping sensation. Id. Thacker reported that she did not sleep well in spite of medication, must change position frequently when sitting or standing, and was trying to do some more regular walking. She has discomfort in both knees and cannot squat and feels that her memory is "not very good of late." Id.

---

[3] Spondylosis is a broad term that refers to some type of degeneration in the spine. See https://www.spine-health.com/conditions/lower-back-pain/spondylosis-what-it-actually-means

[4] Neural foraminal stenosis refers to compression of a spinal nerve as it leaves the spinal canal through the foramen. See www.spine-health.com/glossary/neural-foraminal-stenosis.

Upon physical examination, Thacker was alert, in no distress, able to sit and carry on a conversation. R. 740.  She had multiple areas of soft tissue tenderness in her neck, and tenderness adjacent to the spine in her cervical and lumbar regions. R. 741.  Thacker had discomfort when Dr. Nottingham palpated and moved her shoulders, but her strength was normal.  She had limited range of motion of the low back due to discomfort, but normal straight-leg raises and normal strength in her lower extremities. Id.  Thacker had mild discomfort to movement of the knees.  Her thought, judgment and reasoning ability was appropriate. Id.  Dr. Nottingham recommended that Thacker increase the fiber in her diet, continue walking on a regular basis, and reduce her dose of Xanax. Id.

On February 4, 2014, Thacker had an MRI of her spine which revealed mild central spinal canal stenosis and a small central disc protrusion at C7-T1. R. 843. X-rays of Thacker's lumbar spine taken on April 15, 2014, document findings "suggestive of minimal instability" of L4 and L5, and no gross evidence of degenerative disc disease. R. 1147–48.

Thacker visited Dr. Nottingham on July 18, 2014, "for an examination for updating her status of a disability application for her attorney." R. 1153.  She complained of a myriad of problems, including blisters on her arm and leg, chronic nasal congestion, a cyst on her right wrist, anxiety, and fibromyalgia. Id.  Thacker complained of pain up and down her spine, in her neck, both shoulders, both knees, both hips, and low back.  She complained of episodic weakness of her lower extremities and decreased sensation in her fingers.  She reported that she cannot remain in any one position very long, and is restless when she tries to sleep. Id. Dr. Nottingham noted that Thacker underwent epidural steroid injections but did not receive much benefit. Id.

Upon examination, Thacker was alert, in no distress, had a supple neck, and multiple areas of point tenderness in the soft tissue of her paraspinous areas, both hips and her left knee.

5

Her calves were non-tender, and grip was appropriate bilaterally.  She appeared anxious and depressed but was oriented.  Dr. Nottingham stated, "we had an extremely lengthy visit addressing the many, many issues noted above." He recommended exercise as tolerated and encouraged healthy nutrition. Id.

That same day, Dr. Nottingham completed a Medical Source Statement, and concluded that Thacker could frequently and occasionally lift 10 pounds; stand and/or walk for two hours in an eight hour workday; sit for four hours in an eight hour workday; and must periodically alternate between sitting and standing. R. 1132–33.  Dr. Nottingham found that Thacker has limited ability to push and pull with her upper and lower extremities, and can occasionally balance and stoop, but never climb, kneel, crouch and crawl. R. 1133.  Dr. Nottingham determined that Thacker is limited in reaching in all directions, handling, fingering and feeling, and would be absent from work more than three times a month due to her impairments or treatment. R. 1134.

Thacker returned to Dr. Nottingham on October 12, 2014, complaining of abdominal pain, back pain and nausea. R. 1166.  Dr. Nottingham noted that Thacker appeared well; she had no joint enlargement, no extremity weakness, and moderate back tenderness. R. 1169.  Thacker's mood had hysteriod features with exaggerated responses to questions. R. 1170.

On March 27, 2015, consultative physician Edwin Cruz, M.D., reviewed Thacker's records at the request of the ALJ and provided his opinion that Thacker can frequently lift and carry 20 pounds and occasionally lift and carry 50 pounds; sit, stand or walk for eight hours in an eight hour day, with a break to sit after four hours, stand after two hours, and walk after one hour. R. 1257–58.  Dr. Cruz found that Thacker could continuously balance, kneel, and climb; frequently stoop, crouch, crawl, and climb ramps and stairs; frequently push, pull, and reach

6

overhead; continuously handle, finger feel and reach; and never climb ladders or scaffolds.

R. 1260. Dr. Cruz noted Thacker's history of back pain and disc bulge at L4-5. R. 1252. He

noted that Thacker's x-rays and MRI reveal cervical neuro-foraminal stenosis, with no nerve

impingement. Id. Dr. Cruz found no evidence in Thacker's records of muscle atrophy or

weakness, peripheral neuropathy or other nervous system dysfunction, collagen vascular disease,

significant joint erosion, nerve root compression that would limit Thacker's use of her upper or

lower extremities, gastrointestinal bleeding, dumping syndrome, persistent diarrhea,

malnutrition, or malabsorption. Id. Dr. Cruz noted that Thacker is obese and a smoker and he

recommended quitting smoking and losing weight. Overall, Dr. Cruz determined that Thacker

could "engage in gainful employment that requires mild to moderate exertion," and perform

"clerical type of work." R. 1253.

Thacker sought treatment from Dr. Nottingham again in May and June 2015, with

complaints of depression, anxiety and pain. R. 1284, 1300.

Thacker also sought treatment from Wadid Zaky, M.D., and others at Carilion Pain

Management from September 2014 through May 2015. R. 1232–51, 1263–77. Thacker

complained of joint pain, fatigue, numbness and insomnia. R. 1238. Upon examination, Thacker

was alert and oriented, in no apparent distress with a stable gait, no swelling in her extremities,

and normal muscle tone. R. 1239, 1245, 1266, 1274. She had multiple tender points above and

below her waist. R. 1239. Dr. Zaky assessed Thacker with degenerative disc disease, cervical

pain, depression, anxiety, lumbago and fibromyalgia, and referred her to a sleep study. R. 1239,

1246, 1249, 1266, 1274.

When developing Thacker's RFC, the ALJ reviewed Thacker's testimony at the

administrative hearing that she is unable to stand or sit more than 10–15 minutes without

changing position, has flare ups of irritable bowel syndrome, must use the bathroom 6–7 times a

day for 45 minutes at a time, has worsening fibromyalgia, must lie down 5–6 times a day, and on

a "good day" can vacuum the floors and wash dishes.  R. 52–53.  The ALJ reviewed Thacker's

medical records, including her treatment with Dr. Nottingham beginning in 2010, documenting

obesity, diverticulitis, back pain and polyarthralgia; the results of her x-rays and MRI; and her

treatment with Dr. Zaky at Carilion Pain Management beginning in September 2014. R. 53.

> The ALJ summarized Thacker's medical history, stating:
>
> The claimant has degenerative disc disease and fibromyalgia, and the record
> reflects that she is followed in a pain clinic.  X-rays are rather unremarkable,
> however, and clinical findings are notable primarily for tenderness and some
> restriction in range of motion.  The claimant is obese, but there is no evidence that
> she has ever made a concerted effort to lose weight in an effort to improve her
> functional capacity.  The claimant did have elective surgery in July 2013 for colon
> resection, but the record reflects that she recovered from that procedure within
> one year; thus, I am unable to find a closed period of at least 12 months during
> which the claimant was unable to work.

R. 54.  The ALJ noted that she sent a medical interrogatory to Dr. Cruz, "in order to better assess

the functional impact of the claimant's impairments." R. 53.  The ALJ reviewed the opinions of

Dr. Nottingham, Dr. Cruz and the state agency physicians, and stated:

> I have accorded some weight to the opinions of Dr. Cruz and the reviewing
> physicians at the initial and reconsideration levels, who found that the claimant is
> able to perform work at the medium level of exertion.  However, according some
> weight to the claimant's testimony and in consideration of the objective medical
> evidence of record delineated above, I find that the claimant is limited to work at
> the light and sedentary levels of exertion.  I have accorded less weight to the
> opinion of Dr. Nottingham because, although the limitations contained therein are
> apparently based on the claimant's back impairments, X-rays do not show more
> than mild degenerative disc disease.

R. 55.

When making an RFC assessment, the ALJ must assess every medical opinion received

into evidence. See 20 CFR § 404.1527(c). The social security regulations require that an ALJ

give the opinion of a treating source controlling weight if he finds the opinion "well-supported

by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must

give "good reasons" for not affording controlling weight to a treating physician's opinion. 20

C.F.R. § 416.927(c)(2); Brown v. Comm'r, No. 16-1578, 2017 WL 4320263, at *3 (4th Cir.

2017).  Further, if the ALJ determines that a treating physician's medical opinion is not

deserving of controlling weight, the following factors must be considered to determine the

appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of

examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by

medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating

physician's specialization. 20 C.F.R. § 416.927(c)(2)–(5). "None of these factors may be omitted

or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v.

Comm'r, No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v.

Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam).

    While an ALJ is under no obligation to accept any medical opinion, he or she must

explain the weight afforded to each opinion.  See Monroe v. Colvin, 826 F.3d 176, 190–91 (4th

Cir. 2016). If the ALJ provides a sufficient explanation, the court "must defer to the ALJ's

assignments of weights unless they are not supported by substantial evidence." Dunn v. Colvin,

607 Fed. Appx. 264, 267 (4th Cir. 2015) (citing Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir.

2012)).  However, if the ALJ does not adequately explain the weight given to each medical

opinion, the court cannot meaningfully review the ALJ's decision, and remand is warranted.

Monroe, 826 F.3d at 190.

The Fourth Circuit recently clarified the level of explanation required by the ALJ to sufficiently support the weight given to a medical opinion. See Brown, 2017 WL 4320263 at *14; Monroe, 826 F.3d at 189–91.  The ALJ must provide a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189.  The failure of an ALJ to specifically state what treatment history or evidence contradicts a particular medical opinion means "the analysis is incomplete and precludes meaningful review." Id. at 190.  "Where a lack of specificity and analysis prohibits the district court from gleaning the evidence relied upon or the reasoning for weight afforded contradictory opinions, the district court cannot merely look to the record or conclusory statements within the opinion, but must remand the case to that the ALJ can adequately explain if and how the evidence supports his RFC determination." Rucker v. Colvin, No. 715cv148, 2016 WL 5231824, at *4 (W.D. Va. Sept. 20, 2016) (citing Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2016)).

Here, the ALJ provided an explanation of the weight given to Dr. Nottingham's opinion, which allows for meaningful review and is supported by substantial evidence.  The ALJ recognized that Thacker suffered from degenerative disc disease and fibromyalgia. R. 54.  She noted that Thacker had conservative treatment for her musculoskeletal and gastrointestinal impairments, her x-rays were unremarkable and her clinical findings reflect primarily tenderness and some restriction in range of motion. R. 54.  The ALJ accorded "some" weight to the opinions of Dr. Cruz and the state agency physicians that Thacker could perform work at the medium level of exertion.  The ALJ also accorded "some" weight to Thacker's testimony, and based upon the objective medical evidence, determined that Thacker could perform work at the light level of

exertion.  The ALJ gave Dr. Nottingham's opinion "less" weight because his limitations are apparently based on Thacker's back impairment and her x-rays do not show more than mild degenerative disc disease. R. 55.

The record supports the ALJ's conclusion that objective medical evidence does not support the limitations suggested by Dr. Nottingham.  Despite Thacker's complaints of pain and limitations, Dr. Nottingham's treatment notes consistently reflect mild findings on examination. R. 741, 1153, 1169, 1287, 1300,   Dr. Nottingham's notes reflect that despite tenderness in her neck and back, Thacker regularly had normal strength in her upper and lower extremities, normal straight-leg raises, and normal grip strength. R. 741, 1153, 1169, 1300.  On May 22, 2015, Dr. Nottingham's objective findings state only that Thacker is well developed, well nourished and in no apparent distress (R. 1287), and on June 19, 2015, Dr. Nottingham notes "no weakness of extremities." R. 1300.  Likewise, Dr. Zaky's records reflect that Thacker regularly presented with normal muscle tone and stable gait. R. 1239, 1245, 1266, 1274.  These objective findings directly contradict Dr. Nottingham's opinion that Thacker can only lift 10 pounds; stand or walk for two hours in an eight hour workday; and is limited in handling and fingering. R. 1132–33. See Forsyth v. Astrue, No. CBD–09–2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with other physicians' and his own treatment records).

Thacker asserts that the ALJ failed to consider the opinion of Dr. Nottingham that she has limited ability to reach, handle and finger, and is expected to be absent from work more than four days per month due to her medical impairments.  The ALJ recited Dr. Nottingham's medical source statement, including his findings regarding Thacker's limited ability to reach, handle and finger, and her need to be absent from work. R. 53. Dr. Nottingham's treatment notes document

no objective finding of upper or lower extremity weakness.   The ALJ also noted that Dr. Cruz found no evidence of peripheral nerve dysfunction that would limit Thacker's use of her upper or lower extremities. R. 54.

Thacker asserts that the ALJ accorded less weight to the opinion of Dr. Nottingham because x-rays only show mild degenerative disc disease, and provided "no other rational, discussion, or explanation…" Pl. Br. Summ. J. at 23.  However, the ALJ discusses her rationale for her conclusions with regard to Dr. Nottingham's opinion and Thacker's RFC in a more detailed fashion throughout the decision.  The ALJ considered Dr. Nottingham's treatment history with Thacker (R. 53–54); the support of Dr. Nottingham's opinion by the medical evidence (R. 53–55); and Dr. Nottingham's opinion's consistency with the record as a whole (R. 55).  Contrary to Thacker's assertion, the ALJ does not make a cursory mention of Dr. Nottingham's opinion, but rather discusses it over three pages of her step four analysis. R. 53–55.  While the ALJ could have provided a more lengthy discussion in the paragraph stating the weight she gave Dr. Nottingham's opinion, I find the ALJ's decision sufficient to provide the logical bridge required to support her decision to give Dr. Nottingham's opinion less weight. While the record reflects that Thacker suffered from fibromyalgia and pain, there is little evidence supporting Dr. Nottingham's opinion as to the functional impact of those conditions.

Overall, the ALJ's assessment of the medical opinions in the record allows the court to meaningfully review the weight given to each opinion and the ALJ's ultimate conclusions.  The ALJ gave specific weight to each opinion contained in the record and provided additional explanation as to how that weight was assessed.  The ALJ's explanation of the degree of weight she gave the conflicting medical opinions includes the required "narrative discussion describing how the evidence supports each conclusion ...." Mascio, 780 F.3d at 636.; see also Sharp, 2016

WL 6677633, at *5 (finding the ALJ's explanation that "the claimant's reported limitations were not supported by [the treating physician's] office notes" was sufficient to allow meaningful review as required by <u>Mascio</u> because the ALJ relied on and identified a particular category of evidence.) Thus, the ALJ sufficiently explained her reasons for giving little weight to the opinion of Dr. Nottingham, and such reasons are supported by substantial evidence in the record. "[W]e may not reweigh this evidence, and we must defer to the ALJ's determination when, as here, conflicting evidence might lead reasonable minds to disagree whether [the claimant] was disabled." <u>Sharp v. Colvin</u>, 2016 WL 6677633, at *5.

### Depression and Anxiety as Severe Impairments

Thacker asserts that the ALJ erred by finding that her depression and anxiety are non-severe impairments.  An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. § 404.1521(a). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

Thacker bears the burden of proving that her mental impairments were severe. <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." <u>Evans v. Heckler</u>, 734 F.2d 1012, 1014 (4th Cir.1984) (citing <u>Brady v. Heckler</u>, 724 F.2d 914, 920 (11th Cir.1984).

The ALJ considered whether Thacker's depression and anxiety constitute severe impairments in step two of her analysis.  The ALJ acknowledged that Thacker had the severe impairments of fibromyalgia, diverticulitis, obesity and degenerative disc disease. R. 49.

However, she found that Thacker's depression and anxiety, considered singly and in

combination, do not cause more than minimal limitation in her ability to perform basic mental

work activities and are therefore non-severe. R. 51.

The ALJ noted that Thacker visited Justin B. White, M.D., on March 13, 2015, and

related depression, agoraphobia and social anxiety that worsened over the past several years.

R. 50, 1417–22.  Dr. White's note reflects that Thacker's mood was depressed, but her affect was

appropriate and she was friendly and cooperative during the evaluation. R. 1420.  Thacker's

speech was normal in rate, tone, and volume; her thought processes were linear, logical, and

goal-directed; her intellectual functioning was normal; and her judgment was intact. Id.  Thacker

denied hallucinations, delusions, and suicidal/homicidal ideation. Id.  Dr. White assessed

Thacker with recurrent major depressive disorder without psychotic features, generalized anxiety

disorder, and probable pain disorder. R. 1417. The ALJ stated, "there is no evidence of record to

show that the claimant has pursued additional mental health evaluation or treatment since that

date." R. 50.  The ALJ further explained,

> [i]n light of the minimal objective evidence of record concerning the functional impact of
> the claimant's mental impairments or a more restrictive medical assessment by a treating
> or examining physician or mental health professional, I accord great weight to the well-
> supported opinion of the reviewing psychologist at the initial level and find that mental
> impairments cause no more than mild restriction in activities of daily living and no more
> than mild difficulties in maintaining social functioning or concentration, persistence or
> pace. Thus, I find that the claimant's medically determinable mental impairments of
> depression and anxiety, considered singly and in combination, do not cause more than
> minimal limitation in the claimant's ability to perform basic mental work activities and
> are therefore nonsevere.

R. 50–51.

The ALJ's conclusion in step two of her analysis is supported by substantial evidence in

the record.  On May 21, 2013, state agency physician Louis Perrot, Ph.D., reviewed Thacker's

records and noted that Thacker had been diagnosed with depression and anxiety, was treated

with psychotropic medications, had not been referred for mental counseling and had no history

of psychiatric hospitalizations. R. 133. Dr. Perrot determined that Thacker had mild restrictions

of activities of daily living, mild difficulties in maintaining social functioning, and mild

difficulties in maintaining concentration, persistence or pace. Id. He concluded that Thacker has

no major restrictions of her adaptive functioning resulting from mental conditions, and her

mental impairments are non-severe and do not limit her range of work. Id. On October 4, 2013,

Stephen P. Saxby, Ph.D., reviewed Thacker's records and agreed with Dr. Perrot's findings.

R. 157–59.

Thacker sought regular medical treatment from Dr. Nottingham, described in detail

above, and Dr. Nottingham diagnosed Thacker with depression and anxiety and prescribed

medication to treat those conditions. R. 496, 672–73, 1153, 1167, 1296. Dr. Nottingham's

records reflect that Thacker's depression and anxiety were treated exclusively with medication.

Dr. Nottingham did not refer Thacker to a mental health provider.

Further, while Dr. Nottingham's records document Thacker's complaints related to

anxiety and depression, they do not reflect any functional limitations arising from those

conditions. For example, on January 7, 2013, Thacker visited Dr. Nottingham complaining of

significant panic, anxiety, sense of fear, rapid heart rate, sweatiness, inability to concentrate.

R. 672. Dr. Nottingham noted that Thacker has used an anxiolytic for some time but has a

number of challenging social issues and some depressive feelings. R. 672. Upon examination,

Dr. Nottingham found that Thacker was anxious at times, had some depressive appearance to her

affect, but was alert and oriented to time, place and person. He diagnosed anxiety, prescribed

Zoloft and encouraged exercise. R. 673. Likewise, two years later, on June 19, 2015, Dr.

Nottingham noted with regard to Thacker's mental state, "[t]earful at times, memory intact.

15

Intellect and cognitive function normal.  Insight and judgment? Oriented x3." R. 1300.

Additionally, despite being  Thacker's primary treating physician for her mental health

complaints, Dr. Nottingham's medical source opinion did not include any functional limitations

related to Thacker's anxiety or depression.  R. 1132–33.

As the ALJ noted, Thacker's records contain only one examination with a mental health

professional, Dr. White. R. 1416–23.  In March 2015, Dr. White assessed Thacker with

depression and anxiety, but found that her affect was appropriate, she was friendly and

cooperative, she had a normal speech rate and her thought processes were linear, logical and goal

directed. R. 1420.  Thacker did not follow up with Dr. White. R. 1284.

Overall, the record supports the ALJ's conclusion at step two that although Thacker

suffers from anxiety and depression, those impairments did not cause more than a minimal

limitation on Thacker's ability to work.  Although Dr. Nottingham and Dr. White diagnose

anxiety and depression, their treatment notes do not reflect any functional limitations arising

from those conditions.  Rather, her conditions were managed with medication.

Further, even if I find that the ALJ erred in her evaluation of Thacker's anxiety and

depression at step two, such error would be harmless.  "When an ALJ erroneously finds an

impairment to be non-severe at step two, there is no prejudice to the claimant if the ALJ

sufficiently considers the effect of that impairment at subsequent steps." Hammond v. Astrue,

No. TMD 11–2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases); see also

20 C.F.R. § 404.1523; Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Gaskins v. Comm'r,

No. WDQ–13–1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014). Here, Thacker made the

threshold showing that other disorders constituted severe impairments and the ALJ continued

with the sequential evaluation process and considered all of the impairments, both severe and

non-severe, that significantly impacted Thacker's ability to work. R. 52–55. The ALJ discussed

Thacker's anxiety and depression and considered whether they  resulted in any additional

limitations at step four of the analysis. Thus, any error in the ALJ's analysis at step two is

harmless.

### Obesity

Thacker asserts that the ALJ failed to properly consider whether or not her obesity could

exacerbate the impact her impairments have at steps 4 and 5 of the evaluation, specifically that

her obesity may cause more pain and limitation than might be expected from her lumbar spine

degenerative disc disease and fibromyalgia alone. Pl. Br. Summ. J. at 32–33.

SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive

accumulation of body fat." Titles II & Xvi: Evaluation of Obesity, SSR 02-1p, 2002 WL

34686281 at *2, 2002 SSR Lexis 1, at *3 (S.S.A. Sept. 12, 2002). SSR 02-1p also recognizes that

obesity can cause limitations in all exertional and postural functions. Specifically:

> An individual may have limitations in any of the exertional functions such as
> sitting, standing, walking, lifting, carrying, pushing, and pulling. [Obesity] may
> also affect ability to do postural functions, such as climbing, balance, stooping,
> and crouching. The ability to manipulate may be affected by the presence of
> adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat,
> humidity, or hazards may also be affected.

2002 WL 34686281, at *6.  When assessing a claimant's RFC, the ALJ must consider the "effect

obesity has upon the [claimant's] ability to perform routine movement and necessary physical

activity within the work environment" as the "combined effects of obesity with other

impairments may be greater than might be expected without obesity." Id. However, there is no

requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion.

Richards v. Astrue, No. 6:11cv00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal

citations omitted). Rather, courts have found that the ALJ may rely upon medical records which

adequately show a claimant's obesity and adopt the conclusions of doctors who are aware of the claimant's obesity. Id.; see also Martin v. Barnhart, No. 5:10cv00102, 2012 WL 663168, at *5 (W.D. Va. Feb. 29, 2012) report and recommendation adopted sub nom. Martin v. Astrue, No. 5:10cv00102, 2012 WL 994903 (W.D. Va. Mar. 23, 2012) (rejecting the claim that the ALJ failed to properly consider obesity where the ALJ discussed the claimant's testimony and took note of the medical opinions of record regarding her weight).

Furthermore, to challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. Matthews v. Astrue, No. 4:08CV00015, 2009 WL 497676, at *4 n. 4 (W.D. Va. Feb. 27, 2009); see also Phelps v. Astrue, No. 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). That is, Thacker must provide medical evidence establishing functional limitations caused by her obesity that are not addressed in the RFC. Richards, 2012 WL 5465499, at * 13; see also Barr v. Astrue, No. 510cv00074, 2011 WL 3420844, at * 6 (W.D. Va. Aug. 4, 2011) (finding that the plaintiff's high BMI did not obligate the ALJ to include a more detailed analysis in the RFC determination).

Here, the ALJ found at step two that Thacker's obesity was a severe impairment and stated that she considered the obesity at all steps in the sequential analysis. R. 50. The ALJ recognized that the combined effect of obesity with musculoskeletal impairments can be greater than the effect of each impairment considered separately and specifically cited to SSR 02-1p. In assessing Thacker's RFC, the ALJ noted that her treatment records document obesity, and noted in her findings that "the claimant is obese, but there is no evidence that she has ever made a concerted effort to lose weight in an effort to improve her functional capacity." R. 53–54.

Thus, I find that the ALJ considered Thacker's obesity in determining her RFC and that the ALJ recognized that she was required to evaluate Thacker's obesity in compliance with SSR 02-1p. Indeed, the ALJ found Thacker's obesity to be a severe impairment and included limitations in her RFC that accounted for Thacker's obesity: limitation of light work and no climbing of ladders, ropes, or scaffolds. R. 52. Further, as discussed above, the medical evidence does not support Thacker's claim that her obesity severely impairs her functional capacity such that she is incapable of light work. Accordingly, substantial evidence supports the ALJ's RFC determination and I find that the ALJ properly considered Thacker's obesity in accordance with SSR 02-1p.

## **Evaluation of Pain and Credibility**

Thacker asserts that the ALJ failed to provide specific reasons for finding her testimony less than fully credible, as required by SSR 96-7p, and that it is unclear which of Thacker's statements the ALJ found fully credible and which she did not. Pl. Br. Summ. J. at 26–27. Thacker also asserts that the ALJ failed to address her allegations that she needs to lie down during the day and is unable to maintain a static work posture. Pl. Br. Summ. J. at 29.

Thacker's subjective allegations of pain and limitations are not conclusive. Rather, under the two-step credibility analysis,[5] the ALJ must examine all of the evidence, including the

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16–3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016) (effective March 28, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16–3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16–3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.

Here, SSR 16–3p was issued after the ALJ's consideration of Thacker's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96–7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D.W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

objective medical record, and determine whether Thacker met her burden of proving that she

suffers from an underlying impairment which is reasonably expected to produce her claimed

symptoms. Craig v. Chater, 76 F.3d 585, 592–93 (4th Cir. 1996). The ALJ must then evaluate

the intensity and persistence of the claimed symptoms and their effect upon Thacker's ability to

work. Id. at 594–95.

      Here, the ALJ followed the required two step process, and determined first that there is

an underlying medically determinable physical or mental impairment(s) that could reasonably be

expected to produce Thacker's symptoms, such as pain. R. 54. See SSR 96–7p, at *2.  The ALJ

set forth Thacker's subjective complaints about the intensity, persistence and limiting effects of

her symptoms in detail in her opinion.  R. 52.  Specifically, Thacker reported that she is unable to

stand more than 10–15 minutes or sit more than 10–15 minutes without changing posture; that

she suffers from poor memory and concentration, panic attacks, loss of interest in activities due

to depression and anxiety; that she is able to wash dishes and vacuum the floors on a "good day;"

that she must use the restroom 6–7 times a day for up to an hour at a time; that she must lie down

5–6 times a day due to pain and is bedridden at least one day a week; that she suffers from social

anxiety such that she no longer goes out to stores and has mood swings, crying spells and sleep

disturbance. R. 52–53.

      The ALJ reviewed the medical evidence in detail and concluded that Thacker's

statements concerning the intensity, persistence and limiting effects of her symptoms are not

entirely credible. R. 53–54.   The ALJ determined that Thacker's statements about her symptoms

---

      However, I note that the methodology required by both SSR 16–3p and SSR 96–7p are quite similar. Under either, the ALJ is required to consider Thacker's  report of her own symptoms against the backdrop of the entire case record; in SSR 96–7p, this resulted in a "credibility" analysis, in SSR 16–3p, this allows the adjudicator to evaluate "consistency."

and limitations are not consistent with the objective medical evidence and other evidence in the

record.  Id.  Specifically, the ALJ noted:

> The claimant has degenerative disc disease and fibromyalgia, and the record
> reflects that she is followed in a pain clinic.  X-rays are rather unremarkable,
> however, and clinical findings are notable primarily for tenderness and some
> restriction in range of motion.  The claimant is obese, but there is no evidence that
> she has ever made a concerted effort to lose weight in an effort to improve her
> functional capacity.

R. 54.  It is apparent that the ALJ reviewed the medical record regarding Thacker's impairments

in detail and measured her statements about the severity of her symptoms and limitations against

the objective medical evidence.  "[I]n assessing the credibility of a claimant's statements about

pain and its functional effects, the ALJ is supposed to consider whether there are 'any conflicts

between your statements and the rest of the evidence, including your history, the signs and

laboratory findings, and statements by your medical sources or other persons about how your

symptoms affect you.'"  Brown v. Comm'r Soc. Sec. Admin., No. 16-1578, 2017 WL 4320263,

at *14 (4th Cir. Sept. 29, 2017) (citing 20 C.F.R. § 404.1529(c)(4)).  Further, the ALJ must

"build an accurate and logical bridge from the evidence to his conclusion that [the claimant's]

testimony was not credible."  Brown, 2017 WL 4320263 at *14 (quoting Monroe v. Colvin, 826

F.3d 176, 189 (4th Cir. 2016).  Here, the medical records contradict Thacker's administrative

hearing testimony. Considering Thacker's treatment notes, together with the opinions of Dr.

Nottingham, Dr. Cruz and the state agency physicians, substantial evidence supports the ALJ's

conclusion that objective medical evidence undermined Thacker's statements regarding the

extent of her limitations.  Specifically, Thacker's allegations that she needs to lie down during

the day and cannot maintain a static work posture for more than 10–15 minutes are contradicted

by both the opinions of Dr. Nottingham and Dr. Cruz, who found that Thacker could sit for four

hours in an eight hour period and stand for two hours in an eight hour period.

It is for the ALJ to determine the facts and resolve inconsistencies between a claimant's alleged impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Sharp v. Colvin, 2016 WL 6677633, at *6 ("We may not reweigh this evidence, make credibility determinations, or supplant the ALJ's judgment with our own.") (internal citations omitted.) The ALJ's evaluation of Thacker's symptoms is supported by substantial evidence, and the court will not disturb it.

## CONCLUSION

For the reasons set forth above, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** Thacker's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Enter: January 24, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge